# Billups *v.* Gilbert.

### Bill to Define Boundary.

(Decided November 4, 1915.   Rehearing denied December 2, 1915.
70 South. 145.)

1. **Boundaries; Establishment.**—Where the parties to a bill to establish an uncertain boundary line, the bill being filed under subdivision 5, § 3052, Code 1907, entered into a consent decree fixing the boundary, and providing for commissioners to lay it out, but making no provision in the decree for a report by the commissioners of the data or evidence upon which they acted, the report of such commissioner as to the true line could not be revised by the court, in the absence of evidence of fraud; it not appearing that the parties desired that such revision should be made.

2. **Same; Title.**—Where the parties to a suit to determine disputed boundary lines entered into a consent decree establishing a line and by the agreement, which was carried into the decree, provided for commissioners to lay out the line, and to report whether respondent had been cultivating or using any lands on the other side of the agreed line, and to determine the value of the use, and the commissioners found that respondent had been using lands beyond his line, and fixed the value of such use, the respondent cannot complain of a personal decree rendered against him for the value of such use, on the ground that the court was exceeding its power by proceeding to determine disputed title, since the consent decree did not contemplate the determination of any such question, but merely to fix the value of the use of the land outside of respondent's boundary.

3. **Equity; Jurisdiction; Money Decree.**—A court of equity has jurisdiction to render a personal decree for the payment of money.

APPEAL from Russell Chancery Court.

Heard before Hon. W. R. CHAPMAN.

Bill by Mary E. Gilbert against James B. Billups and another, to establish a disputed boundary line. From the decree rendered, respondent Billups appeals. Affirmed.

EVANS, FERRELL & GLENN, for appellant. NORMAN & SON, and GLENN & DE GRAFFENRIED, for appellee.

McCLELLAN, J.— (1) This bill was filed by Mary E. Gilbert against Billups and Nipper. The object of the bill was to establish the dividing line between adjoining quarter sections, viz., the northeast quarter of section 14, township 15, range 29, in Russell county, belonging to Billups, and the southeast quarter of that section, belonging to complainant. The bill invoked the jurisdiction expressed in Code, § 3052, as follows: "The power and jurisdiction of courts of chancery extend.  *  *  *  5.—To establish and define uncertain or disputed boundary lines."

By, and in consequence of, written agreements executed by the complainant and Billups and, also, by their respective solicitors, a consent decree was entered by the court wherein the true line between these quarter sections was decreed to "be the half section line of section 14,  *  *  *  that the government line of the northeast quarter of said section  *  *  *  is the true and correct dividing line between the lands of the complainant and the respondent in this cause, so far as the lands involved in this controversy are concerned."

A commission of three, to lay and mark the line thus agreed upon, was constituted by the decree, as the agreement binding the parties provided. No provision was made in the decree for a report by these commissioners of the data or evidence upon which they relied or acted in laying and marking the line thus established upon the agreement of the parties. The commission reported their action in locating the line and therein described the line marks and its location, which description the court carried into a formal decree. Under the agreements and under the consent decree, Billups cannot be heard to now complain that no basis for revision of the act of the commissioners in locating and marking the line was provided in the consent decree, nor that the data or evidence or method used or relied upon by the commissioners in locating the line on the soil was not required by the consent decree, or was not brought before the court in such manner as to admit of objections, and thereupon revision thereof by the court; no fraud on the part of the commissioners being asserted. If it was the desire of the parties to have a review or revision of the act of the commissioners in laying and marking the agreed line, that matter should have been saved in the consent decree.

(2, 3) In the agreement, and carried therefrom into the decree, was provision authorizing the commissioners "to ascertain

and report to the court, after they have established the location of said half section line from evidence to be submitted to them as to whether or not the respondent in this cause, J. B. Billups, or any tenant of his, or other person in his employ, have been using, cultivating, or otherwise occupying any of the lands in the S. E. ¼ of section 14, and if it be ascertained and determined by said commissioners from such evidence that the said Billups has been using, cultivating, or otherwise occupying any of the land in the S. E. ¼ of said section 14, then the said commission shall ascertain the value of the use and occupation of that portion of the S. E. ¼ of said section 14 so ascertained by them to have been in the use  *  *  *  of said J. B. Billups  *  *  * and report the value of the same to this court."

In accordance with this warrant and authority of the consent decree, the commissioners reported to the court that they had ascertained that Billups, or his tenants or employees, had used, etc., a part of the land belonging to the complainant, and that the value thereof was $20. The court confirmed the report in this respect; and a personal decree for that sum was thereupon rendered against Billups.

It is insisted for appellant that the chancery court was without rightful power in this instance, under the quoted definition of its jurisdiction in Code, § 3052, to try or to determine the title to land, or to render a personal judgment against Billups in the circumstances disclosed. The argument for the appellant is rested, in the main, upon the interesting discussion and decision of the Oregon court in *King v. Brigham,* 23 Or. 262, 31 Pac. 601, 18 L. R. A. 361, where it was ruled, in the interpretation of a statute of that state, of the character hereinabove set forth, that the conference on the court of equity of jurisdiction to try and to determine the location of confused or uncertain boundaries (our statute uses the terms "uncertain" or "undisputed" boundaries [see *Ashurst v. McKenzie,* 92 Ala. 484, 9 South. 262; *Guice v. Barr,* 130 Ala. 570, 30 South. 563], which were decisions extant when the quoted provision was introduced into Code, § 3052) does not include the power to try and to determine title, unless an equity, independent of the statutory extension of jurisdiction, appears to invite, sustain, or justify the court of equity in exercising its powers to try a question of title within and under the accepted practice in equity to accord full decision in

[Billups v. Gilbert.]

a cause where jurisdiction for a related purpose exists or has been acquired; for "there is no want of power in a court of equity to determine titles to lands" (*Gulf Red Cedar Co. v. Crenshaw*, 148 Ala. 343, 351, 42 South. 564). Whatever may be the proper interpretation and effect of the addition of subdivision 5 to Code, § 3052, when considered in the light of the two conditions the provision of that subdivision was doubtless intended to meet or to affect, the consent decree under review did not comprehend the trial or determination of any controverted question of title to the lands, the boundary of which, on one side, was involved. The written agreements, on which the consent decree was based, precluded any such function or action by the court. The obvious effect of the agreement, and thereupon that of the consent decree, was to fix the dividing line and to concede to each the respective title to the land, in those quarter sections lying either north or south of the true dividing line, which the consent decree and the agreements fixed. As far as that line was concerned, the only unsettled matter was the actual laying and marking of the agreed line. So the proposition pressed as upon the considerations noted and discussed in *King v. Brigham*, 23 Or. 262, 31 Pac. 601, 18 L. R. A. 361, is not presented by this record. The concluding provision in the decree, confirming the report of the commissioners, for the issuance by the register of a writ to establish the complainant in possession of the land in question, on the south side of the dividing line, if the possession was not surrendered by the respondent, was but an effort to effectuate the competent agreement of the parties, and of the consent decree by and through the appropriate process of the court; the respondent, Billups, having bound himself by an agreement that conceded the title of the land south of the true line to be in complainant. The only objection taken in the court to that feature of the report of the commissioners wherein it was ascertained that Billups, or his tenants, etc., had been in possession of lands south of the true line dividing the mentioned quarter sections was this: "Because said report fails to show of what land said commissioners found the said Billups or his tenants in possession, which belonged to the complainant and for the use of which they assessed damages."

The report of the commissioners was silent in the respect indicated by the exception or objection quoted. The consent decree

of date May 18, 1914, only required that the commissioners report to the court the "value of the use of the land south of the true line." This the report did. So the objection or exception quoted was predicated of a matter outside of the duty and obligation, in that regard, imposed on the commissioners by the decree of the date stated. The court of equity does not want for power to enter decrees for the payment of money, a personal decree. The parties expressly submitted themselves to the jurisdiction of the court in respect of this matter of use vel non, by Billups, of the land south of the true line; and the decree for $20 was and is a personal decree. No fraud or other vitiating fact being urged or shown in or about that feature of the report or of the decrees, this court cannot see how the decrees, or either of them, in this respect, are unwarranted, or are affected with error on the single ground taken in the exception quoted.

The decree must be affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.